UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BENJAMIN COLE<br><br>Defendant. | Case No. 23-CR-113(TNM) |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Benjamin Cole to 11 months' imprisonment, which is at the mid-range of the 8–14-month guideline range, 3 years of supervised release, a $100 special assessment, and $2,000 in restitution.

I.      INTRODUCTION

The defendant, Benjamin Cole, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department (MPD) also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts,

1

Cole, and members of his group, known as the "Guardians of Freedom (GoF)," an organization loosely affiliated with the Three Percenters,[2] traveled from Florida to Washington, D.C. to attend the "Stop the Steal" rally on January 6, 2021. Cole and other members of the GoF arrived in the Washington, D.C. area on January 5 and checked into a hotel in the downtown area. On January 6, 2021, they attended the rally and then later went to the U.S. Capitol.

Cole joined the riot at the Lower West Terrace ("LWT") where he and others entered the LWT Tunnel ("the Tunnel"), which provides direct access to the Capitol. The officers in the Tunnel were under siege for almost two and a half hours from defendants such as Cole. Cole confronted and assisted in confronting the police officers that were preventing a breach into the Capitol through the Tunnel, by adding his force, momentum, and effort to that of other riotersin a "heave-ho" effort, putting intense aggregate pressure on the police line in front of the rioters.

The government recommends that the Court sentence Cole to 11 months' incarceration,

---

but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

[2] According to the website of the Anti-Defamation League:

> Three Percenters are part of the militia movement, which supports the idea of a small number of dedicated "patriots" protecting Americans from government tyranny, just as the patriots of the American Revolution protected early Americans from British tyranny. The Three Percenter concept, created in 2008, is based on an inaccurate historical claim that only three percent of Americans fought in the Revolutionary War against the British. Three Percenters may join or form traditional militia groups but often form non-paramilitary groups or online networks. Many are not associated with any particular groups. The Three Percenter concept both contributed to and benefited from the resurgence of the militia movement that began in 2008.

https://www.adl.org/resources/backgrounder/three-percenters (visited September 12, 2023).

which is within the advisory Guidelines' range of 8-14 months. A 11-month sentence reflects the gravity of Cole's conduct, but also acknowledges his early admission of guilt.

## II.  FACTUAL BACKGROUND

### A.  The January 6, 2021, Attack on the Capitol

The government refers the court to the stipulated Statement of Offense filed in this case, ECF No. 76, for a short summary of the January 6, 2021, attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020, presidential election.

### B.  Cole's Role in the January 6, 2021, Attack on the Capitol

On January 5, 2021, Cole, traveled to Washington, D.C. with members of a militia group called the Guardians of Freedom ("GoF")[3]. After staying in in a downtown hotel that night, the group attended the "Stop the Steal" rally on January 6, 2021.

Cole wore a red flannel-type shirt and tan/brownish pants; sunglasses and a green knit hat under a green baseball cap bearing a patch with the words "pedophile hunter" and a rifle graphic, which is believed to represent his association with the "boogaloo movement,"[4] a tactical vest

---

[3] Other members of the GoF militia group that traveled with Cole and have been charged for their involvement in riots at the U.S. Capitol are Joseph Pavlik, Brian Preller, and Edward Crowley (23-cr-45-TNM), Jonathan Rockholt (23-cr-104-TNM), and Tyler Bensch (23-cr-189-TNM).

[4] According to the website of the Anti-Defamation League:

> The boogaloo movement is an anti-government extremist movement that formed in 2019. In 2020, boogalooers increasingly engaged in real world activities as well as online activities, showing up at protests and rallies around gun rights, pandemic restrictions, and police-related killings. The term "boogaloo" is a slang reference to a future civil war, a concept boogalooers anticipate and even embrace. The ideology

3

and a drab colored scarf, and he carried a backpack with the word "THREE PERCENTER."

Cole also carried a black expandable metal baton in his back pocket.

The following are images of Cole as he appeared on January 6, 2021:

  

**(Left to Right) Image 2A (depicting Cole with the tactical vest); Image 2B (depicting Cole with the green baseball cap bearing the patch "Pedophile Hunter" and the backpack with the "THREE PERCENTER" patch; and Image 2C (depicting Cole with the black expandable baton in his back pocket).**

Following the rally, Cole, and several other members of the group, moved together on

---

of the boogaloo movement is still developing but is primarily anti-government, anti-authority and anti-police in nature. Most boogalooers are not white supremacists, though one can find white supremacists within the movement. The boogalooers' anti-police beliefs prompted them to participate widely in the Black Lives Matters protests following the killing of George Floyd by Minneapolis police in May 2020. Boogalooers rely on memes and in-jokes, as well as gear and apparel, to create a sense of community and share their ideology. Although boogalooers primarily oppose the government and police, the movement does have other interests. Perhaps the most prominent—and unusual—of these is an obsession with pedophiles.

https://www.adl.org/resources/backgrounder/boogaloo-movement (visited September 12, 2023)

Capitol grounds from the rally to the scaffolding erected for the inaugural stage. At approximately 3:08p.m., Cole and other members of the GoF group were among the rioters on the northwest side of the capitol, near the northern scaffolding. At approximately 4:15 p.m. law enforcement officers held their ground inside the Tunnel as they protected the U.S. Capitol from breach by rioters. A mob of rioters in the mouth of the Tunnel began pushing in concert against the police officers. During his approach to the Tunnel, Cole watched the violence occurring in the Tunnel and despite viewing this violence, he continued his approach to the Tunnel. *See* Image 3.



**Image 3**
(Screenshot of Exhibit 1 at 1 minute and 47 seconds, Cole is circled in red)

Cole, and other members of GoF, continued their approach to the Tunnel and joined other rioters who attempted to forcefully push through the United States Capitol Police (USCP) and Metropolitan Police Department (MPD) officers to gain access to the Capitol's interior. At approximately 4:19 p.m. Cole can be seen using his arm as leverage against the Tunnel entrance and using his body weight to push against other rioters as they pushed against the police line. *See* Image 4.



**Image 4**
(Screenshot of Exhibit 2 at 4 minutes and 28 seconds)

Cole then joined the other rioters in their efforts to push against the line of officers inside the Tunnel. As a direct result of the actions of Cole and the other rioters in the Tunnel at that time, the rioters penetrated deeper into the Tunnel, the police line was pushed further back, and the rioters came closer to breaching into the Capitol. Based on a review of Capitol surveillance video and open-source videos and/or images, Cole was pushed out of the LWT Tunnel at approximately 4:20 p.m. when the police sprayed chemical irritant and made a push on the rioters in the Tunnel. After law enforcement officers pushed Cole and members of his group out of the tunnel entrance, Cole and these other members of his group moved to the west side of the Lower West Terrace.

Sometime in January 2021 after the riot, the following was posted to Cole's Instagram account regarding his presence at the Capitol on January 6, 2021, and his membership in the Three Percenters organization. *See* Image 5.



**Image 5**

Additionally, in January of 2022, the following message was posted on Cole's Facebook account apparently regarding his conduct on January 6 and the Federal Bureau of Investigation's (FBI's) investigation of his conduct. *See* Image 6.



**Image 6**

The FBI interviewed Cole twice regarding the events of January 6. During the initial interview (in-person), Cole admitted being in Washington, D.C., on January 6. However, Cole denied that he or anyone he was with was close to the Capitol Building and said that the closest he got was a road in front of the Capitol. During the second interview, Cole admitted that he was within a "courtyard area" and saw 10 to 12 riot shields on the ground. Cole denied picking up or taking any of the riot shields. Based on the context of Cole's statement, as well as open-source and other video of police riot shields within the restricted Capitol Grounds, it appears Cole's admission to being within a "courtyard area" and seeing riot shields on the ground was a reference to being within the restricted Capitol Grounds.

### III. THE CHARGES AND PLEA AGREEMENT

On April 5, 2023, an Information was filed charging Cole with one felony count of 18 U.S.C. § 231. On May 30, 2023, Cole was convicted of 18 U.S.C. § 231, based on a guilty plea entered pursuant to a plea agreement.

### IV. STATUTORY PENALTIES

Cole now faces sentencing on 18 U.S.C. § 231(a)(3), civil disorder. As noted in the plea agreement and the Presentence Report issued by the U.S. Probation Office, Cole faces up to five years of imprisonment, a supervised release term of not more than three years, a fine of up to $250,000, restitution, and a $100 mandatory special assessment.

### V. THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). In this case, the parties agree that the following Sentencing Guidelines sections apply:

| | |
|---|---|
| U.S.S.G. § 2A2.4(a) Base Offense Level | **10** |
| U.S.S.G. § 2A2.4(b)(l)(A) Specific Offense Characteristics | |
| Physical Contact | **+3** |
| **Total** | **13** |
| | |
| U.S.S.G. § 3El.l Acceptance of Responsibility | **-2** |
| **Total Adjusted Level** | **11** |

The U.S. Probation Office calculated Cole's criminal history as category I, which is not disputed. PSR (ECF 82) ¶ 43. Accordingly, based on a total adjusted offense level, after acceptance of responsibility, of 11, Cole's Guidelines imprisonment range is 8 to 14 months' imprisonment. Cole's plea agreement contains an agreed-upon Guidelines range calculation that mirrors this calculation.

9

## VI.     SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.     Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Cole's felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United States into a Constitutional crisis. Cole forced his way to the Lower West Terrace and confronted law enforcement officers attempting to hold off rioters in the Tunnel and prevent a further breach of the Capitol. The most important factors to be considered in Cole's case are that: (1) he traveled to Washington, D.C., and the United States Capitol, with a subgroup of the "Three Percenters" militia group, the "Guardians of Freedom;" (2) he wore military clothing, indicating his awareness of the possible violence at the Capitol on January 6; (3) he saw violence in the Tunnel from a close vantage point, and instead of turning back he continued toward the violence and engaged with law enforcement officers in the Tunnel; and (4) he carried an expandable baton when he was on U.S. Capitol Grounds. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Cole's History and Characteristics

Cole is a 39-year-old that has obtained a GED. He has maintained fairly steady employment in a variety of jobs. Cole does not have a prior criminal history. Despite this, Cole traveled with other members of the GoF from Florida Washington to attend the "Stop the Steal" rally on January 6, 2021. His clothing and gear indicate that he was prepared for violence on January 6th as he wore

10

a green baseball cap bearing a patch with the words "pedophile hunter" and a rifle graphic, which is believed to represent his association with the "boogaloo movement," a tactical vest, and a backpack with the word "THREE PERCENTER." Cole also carried a black expandable metal baton in his back pocket. He traveled with other members of GoF to the Capitol building where he and his associates joined the riot on at the Lower West Terrace and then entered the Tunnel and became a part of the "heave-ho" effort against law enforcement officers.

Furthermore, although the defendant did quicky accept responsibility for his actions prior to indictment, his social media posts following January 6th show a lack of remorse.

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Cole's criminal conduct on January 6 was the epitome of disrespect for the law. Cole and members of his group came prepared for violence at the Capitol on January 6, 2021. He traveled in military formation with his group, carrying an expandable police baton, and tried to force his way past officers who were defending the Tunnel and the Capitol from further breaches. He engaged with officers in the Tunnel before being expelled. He has not shown remorse for his actions but did accept responsibility for his actions early on in the case. For that reason, the government is recommending a sentence in the mid-range of the sentencing guideline range.

D.     **The Need for the Sentence to Afford Adequate Deterrence**

*General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C.§ 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[5] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. Cole was a member of the GoF, a militia group that had prepared for violence on January 6th at the U.S. Capitol Building. Cole himself wore a tactical vest and carried a baton as he traveled in military formation with other members of this group while on Capitol Grounds. Furthermore, he observed the violence at the Tunnel and then chose to join in on the violence, using his arms to leverage his body weight in the "heave-ho" efforts against law enforcement in the Tunnel.

E.     **The Importance of the Guidelines**

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and

---

[5] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism").

adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise," and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

      **F.**    **Unwarranted Sentencing Disparities**

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord United States v. Sanchez*, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity. *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC), Sent. Hrg. Tr. at 49 ("as far as disparity goes, … I am being asked to give a sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (Statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013).[6]

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses

---

[6] If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022, Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (Statement of Judge Pan).

and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009). *See id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").[7]

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

The facts of Cole's case are similar to *United States v. Ryals,* 21-CR-244 (CKK), where the defendant was sentenced to a 9-month term of imprisonment for his plea to 18 U.S.C. § 231. Ryals had observed United States Capitol Police officers attempting to defend the Capitol Building. Despite this, Ryals illegally entered through a side door of the U.S. Capitol and approached a locked office door just inside the entrance. After observing that the office door was locked, he attempted to break down the door using his shoulder and was then joined by other rioters who broke through the door. After being in the office for a short period of time, Ryals was forced out by Capitol Police and then re-entered the Capitol building. Following January 6th, 2021, Ryals posted a statement on Facebook calling himself a "patriot" and that the country was headed for war. The Guidelines calculation for Ryals was 0-6 months, but due to the substantial aggravating

---

[7] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

15

circumstances of his case, the government recommended six months, the top of the Guidelines range.

Jonathan Rockholt was one of the GoF members who traveled with Cole, and who also forced his way to the Tunnel where he confronted police officers. Rockholt received a sentence of 5 months incarceration for his convictions for violations of 18 U.S.C. § 231 and 18 U.S.C. § 641. *United States v. Rockholt*, 23-CR-104 (TNM). The Guidelines range for Rockholt was 10-16 months imprisonment.

Recently, this Court sentenced another GoF member who traveled with Cole, and who also had forced his way to the tunnel where he confronted police officers, Brian Preller. Preller received a sentence of 60 months of probation, including 8 months of location monitoring, for his conviction under 18 U.S.C. § 231. *United States v. Preller,* 23-CR-45 (TNM). His Guidelines range was 8 to 14 months. However, a distinguishing factor in the *Preller* case is that the government recommended a sentence at the low end of the guideline range, due to Preller's providing information to the government, in an attempt to assist the government in the investigation of others.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[8] Generally, restitution under the VWPA must "be tied to the loss

---

[8] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes

caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Cole must pay $2,000 in restitution, which reflects in part the role Cole played in the riot on January 6.[9] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol caused approximately $2.8 million in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of October 2022. *Id.* As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD. Cole's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 104.

---

covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[9] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VIII. CONCLUSION

For the reasons set forth above, the government recommends that the Court impose a sentence of 11 months' imprisonment, the mid-range of the guideline sentencing range, 3 years of supervised release, a $100 special assessment, and $2,000 in restitution.

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES
                                  UNITED STATES ATTORNEY

By:    */s/ Holly F. Grosshans*
           HOLLY F. GROSSHANS
           Assistant United States Attorney
           D.C. Bar No. 90000361
           U.S. Attorney's Office for the District of Columbia
           601 D Street, N.W.
           Washington, D.C. 20530
           Phone: (202) 252-6737
           Email:   Holly.Grosshans@usdoj.gov